# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| KATHRYN SUE CONLIN, | Case No. ED CV 13-01451 (SH) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's applications for Disability Insurance Benefits and Supplemental Social Security Income. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings (Brief with Points and Authorities in Support of Plaintiff's

1

Complaint ["Plaintiff's Brief"]; Defendant's Brief in Opposition to Plaintiff's Brief in Support of Complaint ["Defendant's Brief"]); and the defendant has filed the certified transcript of record.  After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On November 30, 2009, plaintiff Kathryn Conlin filed applications for a period of disability or Disability Insurance Benefits and for Supplemental Social Security Income.  Both applications alleged an inability to work since January 1, 1998 due to a mental illness, short-term memory loss and a broken right leg.  (See Administrative Record ["AR"] 140-47, 163-64).  On April 25, 2012 (following a hearing on January 24, 2012, see AR 28-45), an Administrative Law Judge ("ALJ") issued a decision.  The ALJ determined that since the date last insured plaintiff had severe impairments -- "status post right tibial plateau fracture and open reduction internal fixation; a history of chronic osteomyelitis; degenerative joint disease; obesity; and a history of cellulitis" -- but found that plaintiff was not disabled within the meaning of the Social Security Act.  (See AR 9-21).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (see AR 1-3), plaintiff filed this action in this Court.

Although plaintiff characterizes her claim as one claim, plaintiff actually is making three challenges to the ALJ's Decision.  Plaintiff alleges the ALJ erred in: (1) failing to properly consider the plaintiff's treating physician's opinion; (2) failing to properly consider the consultative examiner's opinion; and (3) failing to properly consider whether plaintiff meets or equals Listing 1.03.

# DISCUSSION

2

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to properly consider or give specific and legitimate reasons for rejecting the opinion of Dr. Suszter, plaintiff's treating physician. Defendant asserts that the ALJ provided proper reasons for rejecting Dr. Suszter's opinion.

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-(d). If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

In a form entitled "Medical Opinion Re: Ability to do Work-Related Activities (Physical)," dated December 21, 2011, Dr. Michael Suszter stated that plaintiff had the following limitations due to arthritis in her right knee: plaintiff can lift and carry no more than 10 pounds occasionally (no more than 1/3 of an 8-hour day) or frequently (1/3 to 2/3 of an 8-hour day) ; plaintiff can stand and walk less than 2 hours during an 8-hour day; plaintiff can sit about 3 hours during an 8-hour day; plaintiff can sit 60 minutes and stand 30 minutes before changing position to relieve discomfort; plaintiff must walk around every 60 minutes for 5 minutes; plaintiff needs to lie down every one or two hours; plaintiff can twist and climb stairs occasionally; plaintiff cannot stoop (bend), crouch or climb ladders; plaintiff must avoid concentrated exposure to extreme cold and heat, wetness and humidity and must avoid moderate exposure to hazards (machinery, heights,

etc.); plaintiff did not have restrictions regarding noise and fumes, odors, gases, poor ventilation; and plaintiff's impairments would cause her to be absent from work more than three times a month. (See AR 433-35).[1]

The ALJ addressed Dr. Suszter's opinion as follows:

> The undersigned has given little weight to the opinion of the claimant's treating physician, Dr. Suszter (Ex. 16F). The evidence of record does not support such restrictive limitations. Prior to the claimant's date last insured, the claimant had a history of cellulitis. As of the filing date for supplemental security income, the evidence shows degenerative narrowing of the right knee and some swelling with limited range of motion (Exs. 3F, p. 4 and 1F, p. 4). Dr. Suszter's opinion is without substantial support from any objective clinical or diagnostic findings. The claimant's longitudinal clinical presentation; type of, course of and response to treatment; ongoing objective evidence; and daily activities do not support that opinion (e.g., Exhibits 14F, 15F, 2E, 7E, 8E). (AR 19).

Assuming that Dr. Suszter was in fact plaintiff's treating physician,[2] the Court finds that the ALJ properly rejected his opinion.

---

[1] A Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).
The ALJ found that plaintiff had the RFC to perform a range of light work in that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, she can stand and/or walk for 2 hours out of an 8-hour workday with regular breaks, she can sit for 6 hours out of an 8-hour workday, and she can climb ramps and stairs, balance, stoop, kneel, crouch and crawl occasionally; however, plaintiff was limited in that she can push or pull with the right lower extremity occasionally, she cannot climb ladders, ropes or scaffolds, and she was precluded from concentrated exposure to extreme cold or hazards. (See AR 15).

[2] The only other documents in the record prepared by Dr. Suszter were "General Ortho Clinic Notes" dated January 20, 2011 and December 21, 2011 (the same date the other document was prepared). On January 20, 2011, Dr. Suszter noted that plaintiff had right knee degenerative joint disease due to status post open reduction internal fixation of the right tibial plateau, but stated that plaintiff did not have a disability. (See AR 430). On December 21, 2011, Dr. Sustzer noted that plaintiff had right knee degenerative joint disease due to status post open reduction internal fixation of the right tibial plateau, and that plaintiff continued to have pain. (See AR 418).

As found by the ALJ, there was no explanation given for the bases of Dr. Sustzer's opinion -- the opinion was contained in essentially a check-off report, and there were no supportive clinical or diagnostic findings.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)("The ALJ, however, permissible rejected [three psychological evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions.").

Moreover, as found by the ALJ, Dr. Suszter's opinion was inconsistent with plaintiff's response to treatment and ongoing objective evidence concerning plaintiff's condition (see AR 18, 306, 310-11, 322, 383 [after plaintiff fell off a ladder on July 14, 2009 resulting in a comminuted fracture on her right proximal tibia with a possible fibular head fracture, and following open reduction and internal fixation on August 3, 2009, September 17, 2009 diagnostic finding that "[t]he fracture fragments are now stabilized in good position by medial and lateral metallic compression plates and multiple threaded screws"]; AR 18, 385 [September 19, 2009 ultrasound did not reveal evidence of deep venous thrombosis]; AR 18, 388 [October 4, 2009 diagnostic findings that: "There are compression plates stabilizing a comminuted fracture of the medial tibial plateau and proximal tibia.  The fracture lines remain visible."]; AR 18, 389 [October 19, 2009 ultrasound revealed "no right lower extremity deep venous thrombosis]; AR 18, 353, 386 [following a right tibia plateau prominent screw removal and right tibial wound irrigation and debridement on October 23, 2009, October 23, 2009 diagnostic findings that: "[P]roximal tibial drain in place anteriorly. . . No acute change compared to October 4[,] 2009[.]"]; AR 18, 260-64 [February 19, 2010 orthopedic examination revealed that plaintiff could not stand up on her right leg and walked only with crutches, that plaintiff's right knee was swollen, that plaintiff had a limited range of motion in her right knee ("lacks 20 degrees to full extension and flexion is 55 degrees only with tenderness"), that

her right leg was swollen all the way down to the toes, that there was normal strength in her upper and lower extremities, that her sensation was normal, and that her muscle reflexes were 2+]; AR 19, 293 [March 20, 2010 emergency room report stated that plaintiff was diagnosed with cellulitis on the right foot and that plaintiff was discharged with medication]; and AR 19, 402 [September 20, 2011 diagnostic findings that there is a narrowing of the medial knee compartment and that "[t]here are 2 compression plates projected over the proximal tibia with evidence of a healed fracture"]).[3] See Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)(holding that the ALJ's decision to reject the treating physician's opinion due to lack of medical evidence was sufficiently "specific and legitimate" and based on substantial evidence in the record).

Moreover, to the extent that the ALJ rejected Dr. Suszter's opinion based on the opinions of the State agency medical consultants (see AR 19), the ALJ's reasons were specific and legitimate and based on substantial evidence in the record. See Magallanes v. Brown, 881 F.2d 747, 753 (9th Cir. 1989)(holding that non-examining physician's reports may serve as substantial evidence to reject a treating physician's opinion).

The ALJ properly relied on: (1) the March 10, 2010 opinion of non-examining physician, J. Zheutlin, M.D., who found inter alia that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for at least two out of eight hours in a workday, sit for about six out of eight hours in a workday, was limited in her lower extremities, could not use foot controls with her right foot, could not balance, could occasionally climb, stoop, kneel, crouch, and crawl, and should avoid moderate exposure

---

[3] Although the Court does not necessarily agree with the ALJ that Dr. Suszter's opinion about plaintiff's limitations were inconsistent with plaintiff's ability to perform daily activities such as personal hygiene, cleaning the house, doing the laundry, taking care of pets, lifting groceries, and climbing stairs (see AR 16-17, 19, 173-74 [in a Function Report, plaintiff stated she cleans the house, does the laundry, occasionally cooks, feeds the dogs and birds, and cleans the birds' cages]), 206 [In a Disability Report, plaintiff stated she could take care of herself], 209-10 [in an Exertion Questionnaire, plaintiff stated she cleans the house and cooks, climbs up and down three steps, and puts groceries away]), the ALJ's other reasons for discounting Dr. Suszter's opinion were proper, as discussed above.

6

to vibration and all exposure to hazards (see AR 271-76); and (2) the September 2, 2010 opinion of non-examining physician, L.C. Chang, M.D., who found inter alia that plaintiff could occasionally lift twenty pounds, frequently lift 10 pounds, stand and/or walk for at least two hours out of eight hours in a workday, sit for about six out of eight hours in a workday, was limited in her lower extremities (but noted that plaintiff currently was doing better), could not balance, could occasionally climb, stoop, kneel, crouch and crawl, and should avoid concentrated exposure to extreme cold and hazards (see AR 390-94, 397-98).

Since, as noted by the ALJ, Dr. Zheutlin's and Dr. Chang's opinions were "reasonable and consistent with the objective medical evidence" (AR 19), the ALJ properly rejected Dr. Suszter's opinion based on Dr. Zheutlin's and Dr. Chang's findings. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)(holding that the findings of a non-treating, non-examining physician can amount to substantial evidence, so long as other evidence in the record supports those findings).

Finally, contrary to plaintiff's assertion (see Plaintiff's Brief at 9), the ALJ considered the entirety of Dr. Suszter's report, including Dr. Suszter's opinions concerning plaintiff's need to lie down and plaintiff's absences from work. It was not necessary for the ALJ to address every component in that report. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'").

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ failed to properly consider or give a specific and legitimate reason for rejecting the opinion of Dr. Bilezikjian, the consultative examiner. Defendant asserts that the ALJ provided proper reasons for rejecting Dr. Bilezikjian's opinion.

An examining physician's opinion is entitled to greater weight than that of a nonexamining physician. Lester v. Chater, supra. The opinion of an examining

physician can be rejected for specific and legitimate reasons that are supported by substantial evidence on the record. Id.; Andrews v. Shalala, 53 F.3d 1035, 1043.

Zaven Bilezikjian, M.D., conducted an orthopaedic evaluation of plaintiff on February 19, 2010. (See AR 260-63). Plaintiff complained of right knee and leg pain. (AR 260). After noting plaintiff's medical history relating to her July 2009 knee injury, Dr. Bilezikjian examined plaintiff, the results of which are discussed above. (AR 260-63). Based on the evaluation, Dr. Bilezikjian rendered the following opinion: that plaintiff is able to push, pull lift and carry 10 pounds occasionally and less than 10 pounds frequently; that plaintiff can walk and stand less than 2 hours in an 8-hour day using two crutches, touching down with her right leg only; that plaintiff cannot bend, kneel, stoop, crawl, or crouch; that plaintiff cannot walk on uneven terrain or climb ladders; and that plaintiff can sit and do fine and gross manipulative movements without restrictions. (AR 263).

The ALJ addressed Dr. Bilezikjian's opinion as follows:

> The undersigned has also given less weight to the opinion of the consultative examiner, Dr. Bilezikjian (Ex. 3F). Findings from the physical examination revealed limited range of motion with some swelling in the right knee (Ex. 3F, p. 4). The claimant had normal motor strength in the lower extremities. The opinion of Dr. Bilezikjian is not well supported by the evidence of record. Indeed, the state agency did not accept that opinion, and I agree. (Ex. 11F). (AR 19).

Here, the ALJ provided a specific and legitimate reason for rejecting the opinion of Dr. Bilezikjian. The ALJ properly found that there was nothing in Dr. Bilezikjian's examination that supported more restrictive limitations for plaintiff. See Thomas v. Barnhart, supra. Moreover, as discussed above, the ALJ properly relied on the opinions of Dr. Zheutlin and Dr. Chang to reject Dr. Bilezikjian's opinion.

**ISSUE NO. 3:**

Plaintiff asserts that the ALJ failed to properly consider whether plaintiff's impairments met or equaled Listing 1.03. Defendant asserts that plaintiff has failed to show her impairments met or equaled Listing No. 1.03.

In the Decision, the ALJ found that plaintiff did not have an impairment or a combination of impairments that met or equaled Listing 1.02.[4] (See AR 14-15).

As plaintiff points out, the ALJ did not consider whether her impairments or combination of impairments met or equaled Listing 1.03.[5] However, had the ALJ considered whether plaintiff's impairments or combination of impairments met or equaled Listing 1.03, the ALJ would have found that they did not. The ALJ would not have found that plaintiff had the "inability to ambulate effectively." The ALJ found that

---

[4] Listing 1.02(A) requires "[m]ajor dysfunction of a joint(s) (due to any cause): [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)[,] [w]ith: [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.02(A).

Listing 1.00B2b defines three terms: (1) "inability to ambulate effectively," (2) "ineffective ambulation," and (3) "ambulate effectively."

First, "inability to ambulate effectively" means "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Second, the general definition of "ineffective ambulation" is "having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Third, to "ambulate effectively" means "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school." 20 C.F.R. § 404, Subpart P, Appendix 1, Listing of Impairments 1.00B2b(1).

[5] Listing 1.03 requires "[r]econstructive surgery or surgical arthrodesis of a major weight bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."

9

plaintiff's "allegations concerning the intensity, persistence and limiting effects of her symptoms are less than fully credible" based on the objective evidence in the record, evidence that plaintiff was exaggerating the severity of her symptoms, and plaintiff's ability to perform daily tasks.  (See AR 15-19).  Moreover, even assuming an onset date of July 14, 2009 (the date of plaintiff's fall), the ALJ would not have found that plaintiff did not return to effective ambulation, or was not expected to return to effective ambulation, within 12 months of July 14, 2009, based on the evidence in the record, including the various medical reports relating to plaintiff's condition (see AR 18-19).

Thus, the ALJ's failure to consider whether plaintiff's impairments met or equaled Listing 1.03 was harmless.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)(stating that an ALJ's error is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'"); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless.").

### ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED:  April 25, 2014

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE